UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, *JUDGE*

_____
                                     :

CYBER POWER SYSTEMS (USA) INC.,     :

                                     :

         Plaintiff/Counterclaim     :
         Defendant                  :
         v.                         :     Court No. 21-00200

                                     :

UNITED STATES,                       :

                                   :

         Defendant/Counterclaim    :
         Plaintiff.                 :
_____:

## **ORDER**

Upon consideration of plaintiff/counterclaim defendant's motion to dismiss defendant/counterclaim plaintiff's counterclaim; defendant/counterclaim plaintiff's opposition to the motion to dismiss; and upon consideration of other papers and proceedings had herein; it is hereby

ORDERED that plaintiff/counterclaim defendant's motion be, and hereby is, denied.


DATED:  _____, 2022
         New York, New York                         CLAIRE R. KELLY, *JUDGE*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, *JUDGE*

_____

|  |  |  |
|---|---|---|
| | : | |
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff/Counterclaim Defendant | : | |
| | : | |
| v. | : | Court No. 21-00200 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant/Counterclaim Plaintiff. | : | |

_____

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S <u>MOTION TO DISMISS COUNTERCLAIM</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

BEVERLY A. FARRELL
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel.: (212) 264-9230
Attorneys for Defendant

Dated: March 15, 2022

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

SUMMARY OF ARGUMENT ......................................................................................... 4

ARGUMENT .................................................................................................................... 6

I.    STANDARD OF REVIEW ..................................................................................... 6

   A.  CIT Rule 12(b)(6) .......................................................................................... 6

   B.  This Action Is Subject To De Novo Review ................................................... 7

II.   THE GOVERNMENT'S COUNTERCLAIM IS NOT BARRED BY THE FINALITY
      OF LIQUIDATION BECAUSE LIQUIDATION HAS NOT BECOME FINAL ........... 8

   A.  The Entries Covering The Subject Merchandise
       Are Not Subject To Section 1514(a) Finality .............................................. 8

   B.  The Proper Classification Of The Merchandise Is The Issue Before The Court ....... 10

       1.   The Classification Of The Merchandise Is Subject To *De Novo* Review ........... 11

       2.   The Purpose Of 28 U.S.C. § 1583 .................................................................. 11

III.  THE GOVERNMENT'S COUNTERCLAIM STATES A CAUSE OF ACTION ......... 15

IV.   THE GOVERNMENT'S CAUSE OF ACTION IS INDEPENDENT OF
      28 U.S.C. § 1583 ................................................................................................. 17

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A&D Auto Sales, Inc. v. United States,*
    748 F.3d 1142 (Fed. Cir. 2014)...................................................................................7

*ABB, Inc. v. United States,*
    28 CIT 1444, 346 F. Supp. 2d 1357 (2004) ..............................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................6, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................6, 15

*Chrysler Corp. v. United States,*
    601 F. Supp. 2d 1347 (Ct. Int'l Trade 2009) ...........................................................7

*Constant v. Advanced Micro–Devices, Inc.,*
    848 F.2d 1560 (Fed. Cir. 1998).................................................................................6

*Cormorant Shipholding Corp. v. United States,*
    617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) .........................................................12

*Confederación de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States,*
    459 F. Supp. 3d 1354 (Ct. Int'l Trade 2020) ...........................................................7

*Gould, Inc. v. United States,*
    935 F.2d 1271 (Fed.Cir.1991)...................................................................................7

*Jarvis Clark, Inc. v. United States,*
    733 F.2d  (Fed. Cir. 1984)......................................................................................11

*Saab Cars USA, Inc. v. United States,*
    434 F.3d 1359 (Fed. Cir. 2006).................................................................................7

*Tikal Distributing Corp. v. United States,*
    93 F. Supp. 2d 1269 (Ct. Int'l Trade 2000) ...........................................................12

*United States v. Ford Motor Co.,*
    29 CIT 209 (2005) ....................................................................................................6

*United States v. Islip,*
    22 CIT 852, 18 F.Supp.2d 1047 (1998) ...................................................................7

**Statutes**

19 U.S.C. § 1202……………………………………………………………………4, 11, 12

19 U.S.C. § 1501 ..............................................................................................8, 10

19 U.S.C. § 1503 ....................................................................................4, 11, 12, 17

19 U.S.C. § 1505(b) ...................................................................................................5

19 U.S.C. § 1514 .......................................................................................................9

19 U.S.C. § 1514(a) ..........................................................................................*passim*

*Section 301 of the U.S. Trade Act of 1974,*
   P.L. 93–618, 19 U.S.C. § 2411 ....................................................................*passim*

19 U.S.C. § 2411(b) ..................................................................................................2

19 U.S.C. § 2411(b)(1) .............................................................................................2

19 U.S.C. § 2411(b)(2) .............................................................................................2

28 U.S.C. § 1581(a) .............................................................................................9, 10

28 U.S.C. § 1583 .............................................................................................*passim*

28 U.S.C. § 1583(1) ......................................................................................4, 11, 15

28 U.S.C. § 1592(d) ................................................................................................10

28 U.S.C. § 2639(a)(1) ..............................................................................................7

28 U.S.C. § 2643(b) ......................................................................................4, 13, 15

**Rules and Regulations**

85 Fed. Reg. 48600 ..................................................................................................3

84 Fed. Reg. 29576 ..................................................................................................3

84 Fed. Reg. 57803 ..................................................................................................3

84 Fed. Reg. 57806 ..................................................................................................3

H.R. Rep. No. 96–1235 (1980) ..................................................................... 12, 13, 14

USCIT Rule 12(b)(6) ........................................................................... 4, 6, 7, 8

USCIT Rule 13(a) ............................................................................ 4, 9, 11, 15

**Harmonized Tariff Schedule of the United States**

Chapter 85

8544.42.20..........................................................................................*passim*

8544.42.2000..................................................................................... 2, 3, 10

8544.42.90..........................................................................................*passim*

8544.42.9090 ........................................................................................ 3, 16

Chapter 99

9903.88.03......................................................................................... 5, 16

9903.88.33.................................................................................... 2, 3, 5, 10

Additional U.S. Note 20 (ii)(62). ................................................................. 2

Note 20(II)(61) to subchapter III of chapter 99 ................................................ 3

Note 20(II) to subchapter III of chapter 99 .................................................... 3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

_____

CYBER POWER SYSTEMS (USA) INC.,

     Plaintiff/Counterclaim
     Defendant

     v.      Court No. 21-00200

UNITED STATES,

     Defendant/Counterclaim
     Plaintiff.

_____

## DEFENDANT/COUNTERCLAIM PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT'S <u>MOTION TO DISMISS COUNTERCLAIM</u>

    Defendant/Counterclaim Plaintiff, the United States (the Government), respectfully submits this memorandum of law in opposition to Plaintiff/Counterclaim Defendant Cyber Power Systems (USA) Inc.'s (Cyber Power) motion to dismiss defendant's counterclaim. For the reasons set forth in our memorandum, Cyber Power's motion to dismiss should be denied.

## <u>BACKGROUND</u>

    This action concerns ten entries of cables imported from the People's Republic of China (China) made at the Port of Minneapolis, MN in 2019. Docket No. 1. U.S. Customs and Border Protection (CBP) classified the merchandise upon liquidation under subheading 8544.42.20 of the Harmonized Tariff Schedule of the United States (HTSUS), a duty-free provision. Pursuant to Section 301 of the U.S. Trade Act of 1974 (P.L. 93–618, 19 U.S.C. § 2411) (Section 301), CBP assessed duties on the merchandise at a rate of either 10 percent or 25 percent *ad valorem*, depending on the entry date. With the exception of Entry No. 791-1911526-4, which was liquidated in 2021, the entries were liquidated in 2020. Docket No. 9-1.

Cyber Power timely protested the "[c]lassification and rate and amount of duties assessed."  Docket Nos. 1; *see* 9-1.  Cyber Power claimed that it was protesting the classification of certain telecommunications cables under subheading 8544.42.20, HTSUS, and the assessment of tariffs under Section 301.  Cyber Power claimed that certain of its imported merchandise should be classified under subheading 8544.42.20/9903.88.33, HTSUS, because it falls within a Section 301 exclusion issued by the U.S. Trade Representative (USTR).[1]

Under section 301, the USTR possesses the discretionary authority to initiate an investigation to determine whether (1) a foreign country is engaging in "an act, policy, or practice . . . [that is] unreasonable or discriminatory and burdens or restricts United States commerce;" and (2) "action by the United States is appropriate." 19 U.S.C. §§ 2411(b)(1)-(2).  If, as here, the President or the USTR determines that it is "appropriate" to take initial action in response to an investigation conducted by the USTR, the President (or the USTR acting at the President's direction) is granted broad discretion to take action in order to achieve the elimination of the act, policy, or practice.  19 U.S.C. § 2411(b).  On August 18, 2017, the USTR initiated a section 301 investigation into a wide range of allegedly unfair practices by the Chinese government.  The USTR determined that China's technology transfer policies were inconsistent with United States and international norms and caused billions of dollars in estimated harm to the United States economy every year.  After making the section 301 determination, the USTR, at the direction of

---

[1] The USTR enacted exclusions under Chapter 99, HTSUS, including exclusions for certain goods classifiable under subheading 8544.42.2000, HTSUS, that meet the following language:

> Insulated electric conductors for a voltage not exceeding 1,000V, fitted with connectors of a kind used for telecommunications, each valued over $0.35 but not over $2 (described in statistical reporting number 8544.42.2000).

*See* Subheading 9903.88.33, HTSUS, Chapter 99 Additional U.S. Note 20 (ii)(62).

the President, determined it would be appropriate to impose additional tariffs on products of China.

On June 24, 2019, the USTR initiated the exclusion process by which interested persons may request that certain products classified under a tariff subheading subject to Section 301 duties be excluded from those duties. *See* 84 Fed. Reg. 29576. The exclusions were extended through December 31, 2020. *See* 85 Fed. Reg. 48600. On October 28, 2019, the USTR modified Note 20(II) to subchapter III of chapter 99 to grant product exclusions to certain merchandise entered from September 24, 2018 to August 7, 2020. *See* 84 Fed. Reg. 57803. Note 20(II)(61) to subchapter III of chapter 99, HTSUS, provides for an exclusion from Section 301 duties for "Insulated electric conductors for a voltage not exceeding 1,000 V, fitted with connectors of a kind used for telecommunications, each valued over $0.35 but not over $2 (described in statistical reporting number 8544.42.2000)." *Id.* at 57806.

After considering Cyber Power's protest, CBP denied the protest because "Protestant did not substantiate that the cables are used for transmitting data, voice, or video and failed to show that the subject cables meet the definition of telecommunications. Therefore, CBP has determined that the correct classification for the cables presented is HTSUS 8544.42.9090." The duty rate applicable to subheading 8544.42.90, HTSUS, is 2.6% *ad valorem*. CBP did not reclassify the subject merchandise under subheading 8544.42.90, HTSUS.

Cyber Power timely commenced this action by filing its summons on April 28, 2021. On October 22, 2021, Cyber Power filed the complaint in this action, which challenges CBP's decision to assess Section 301 duties even though Cyber Power claimed that an exclusion to these duties applied. Specifically, Cyber Power claims that the exclusion announced in subheading 9903.88.33, HTSUS, is applicable to its cables because they are classifiable under subheading

8544.42.20 (with the statistical extension of 00 at digits nine and ten).

On December 21, 2021, the Government timely filed its answer, which included the assertion of a counterclaim, pursuant to Rule 13(a) of the Rules of the U.S. Court of International Trade (CIT) and 28 U.S.C. §§ 1583(1) & 2643(b), seeking duties that would be due from importer, Cyber Power, should this Court determine that the subject merchandise should be reclassified and reliquidated under subheading 8544.42.90, HTSUS.

On January 11, 2022, Cyber Power moved to dismiss the Government's counterclaim pursuant to Rule 12(b)(6) of the Rules of the CIT.

## SUMMARY OF ARGUMENT

Cyber Power's motion to dismiss should be denied.  Cyber Power does not seek dismissal on the basis that this Court lacks jurisdiction to hear the Government's counterclaim.  Instead, Cyber Power claims only that the Government has failed to state a claim for which relief can be granted because (i) such a claim is barred by the finality of liquidation under 19 U.S.C. § 1514(a); and (ii) there is no source or basis for the Government's counterclaim cause of action.

Cyber Power is wrong on both points.  The allegations provided in the Government's timely-filed counterclaim are sufficient to state a claim for the increase of duties that would result from this Court's determination that the imported merchandise that is the subject of Cyber Power's action is classifiable in subheading 8544.42.90, HTSUS, and not in subheading 8544.42.20, HTSUS.  Indeed, CBP is charged with enforcing the tariff in accordance with its terms, which includes collecting the proper amount of duties based on the correct classification of imported merchandise.  *See* the HTSUS, codified at 19 U.S.C. § 1202 *et seq*.; 19 U.S.C. § 1503 (if the CIT's final judgment requires reliquidation, including reappraisement of the goods, the final appraised value determined by the Court provides the basis for the assessment); and 19 U.S.C. §

4

1514(a) (when a CIT judgment or order becomes final, the papers transmitted by CBP for the Court file and a copy of the judgment or order are returned to CBP to take action accordingly). Taken together, these statutory provisions supply the grounds for our counterclaim.[2]

Further, as reflected in CBP's denial of Cyber Power's protest, CBP determined that the proper classification of the imported merchandise that is the subject of this litigation is subheading 8544.42.90, HTSUS. Although CBP did not reliquidate the subject merchandise under this subheading, finality under section 1514(a) did not attach as to the classification of the subject merchandise. This is so because Cyber Power protested the classification of, and rate and amount of duties assessed, on the subject merchandise, the protest was denied, and this action commenced. By satisfying these statutory prerequisites, Cyber Power avoided section 1514(a) finality of the liquidation as to all persons, including the Government.

Finally, in its complaint, Cyber Power contends that the subject merchandise should not have been assessed duties under Section 301 of the Trade Act of 1974, pursuant to temporary subheading 9903.88.03, HTSUS, because an exclusion was applicable under 9903.88.33. Yet, for that exclusion to apply, Cyber Power must establish to the Court's satisfaction that the subject merchandise is classifiable under subheading 8544.42.20, HTSUS. Thus, by protesting and commencing this action, Cyber Power must first establish that subheading 8544.42.20 covers the subject merchandise in order to prove that its goods are excluded from Section 301 duties. Because the proper classification of the goods is an open issue, the Government is not foreclosed by section 1514(a) finality from filing a counterclaim.

---

[2] We further observe that, as part of its administrative responsibilities, "CBP shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation." 19 U.S.C. § 1505(b).

# ARGUMENT

## I.   STANDARD OF REVIEW

### A.  CIT Rule 12(b)(6)

"The Court may dismiss a counterclaim for failure to state a claim only 'where it appears beyond doubt that plaintiff can prove no set of facts which will entitle him to relief." *United States v. Ford Motor Co.*, 29 CIT 209, 211 (2005) (quoting *Constant v. Advanced Micro–Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1998)).  "Moreover, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party."  *Ford*, 29 CIT at 211.  Thus, the same analysis applicable to a motion to dismiss a complaint is applicable to one seeking to dismiss a counterclaim.

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when it "raise[s] a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (internal citation omitted).  "While a [counterclaim] . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 545; *see also Iqbal*, 556 U.S. at 662 ("[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  The [counterclaim] must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining whether the factual pleading standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

at 679.

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court considers the allegations in the [counterclaim] as well as documents "'incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Confederación de Asociaciones Agricolas del Estado de Sinaloa, A.C. v. United States*, 459 F. Supp. 3d 1354, 1361 (Ct. Int'l Trade 2020) (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). Finally, the Court must view all well-pleaded facts in the light most favorable to the non-moving party. *See United States v. Islip*, 22 CIT 852, 854, 18 F.Supp.2d 1047, 1051 (1998) (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)).

### B.  <u>This Action Is Subject To *De Novo* Review</u>

This Court "reviews Customs' protest decisions de novo." *Chrysler Corp. v. United States*, 601 F. Supp. 2d 1347, 1350 (Ct. Int'l Trade 2009). However, Customs' decisions are statutorily entitled to a presumption of correctness. 28 U.S.C. § 2639(a)(1) ("the decision of the Secretary of the Treasury, the administering authority, or the International Trade Commission is presumed to be correct. The burden of proving otherwise shall rest upon the party challenging such decision."). Where a plaintiff challenges Customs' decision, "a court presumes that Customs applied the provision correctly, which means that the plaintiff is left with the burden of showing by a preponderance of the evidence that Customs' decision was incorrect." *ABB, Inc. v. United States*, 28 CIT 1444, 346 F. Supp. 2d 1357, 1364 (2004); *see also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368 (Fed. Cir. 2006) (a plaintiff must "meet its burden of contradicting Customs' presumed correct factual finding . . . ."). The presumption of correctness "is not a true evidentiary presumption governed by Federal Rule of Evidence 301," instead it is "an 'assumption' that allocates to plaintiff the burden of proof on contested factual issues that arise from the protest decision." *Chrysler*, 601 F. Supp. 2d at 1354.

**II.    THE GOVERNMENT'S COUNTERCLAIM IS NOT BARRED BY THE FINALITY OF LIQUIDATION BECAUSE LIQUIDATION HAS NOT BECOME FINAL**

Cyber Power's motion does not claim that the Court lacks jurisdiction to hear the Government's counterclaim or that the counterclaim was untimely.  Instead, Cyber Power limits its motion to dismiss solely to CIT Rule 12(b)(6), contending that the Government failed "to state a claim upon which relief can be granted."  Mot. at 1.[3]  Cyber Power's motion rests on two arguments: (i) the Government's request for classification under subheading 8544.42.90 with its increase in duties owed is barred by statutory finality under 19 U.S.C. § 1514(a); and (ii) the Government has identified no basis for its counterclaim cause of action.  For the reasons that follow, Cyber Power is incorrect.

**A.  The Entries Covering The Subject Merchandise Are Not Subject To Section 1514(a) Finality**

In pertinent part, section 1514(a) provides:

> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
>
> (2) the classification and rate and amount of duties chargeable;
>
> shall be final and conclusive upon **all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is**

---

[3] "Mot." refers to Docket No. 17-2, Cyber Power's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Dismiss Defendant's Counterclaim.

> **commenced** in the United States Court of International Trade in
> accordance with chapter 169 of title 28 within the time prescribed
> by section 2636 of that title. When a judgment or order of the
> United States Court of International Trade has become final, the
> papers transmitted shall be returned, together with a copy of the
> judgment or order to the Customs Service, which shall take action
> accordingly.

(Emphasis added).

Based on the plain statutory language, the final and conclusive effect of section 1514(a) will not apply to any person, **including the Government**, where a protest has been filed and an action commenced in the CIT. As admitted by Cyber Power in its summons, it filed Protest No. 3501-20-102183 on September 11, 2020, which covered ten entries. Docket No. 1. The issue raised by the protest was "classification and rate and amount of duties assessed." Docket No. 1. The protest was denied on November 4, 2020. Docket No. 9-1 at 1. By commencing this action on April 28, 2021, Cyber Power fulfilled the statutory requirements to avoid finality from attaching to Customs' denial of its protest disputing "the classification and rate and amount of duties chargeable" to the imported merchandise at issue.

Cyber Power's discussion of exceptions to finality of liquidation is inapposite and does not affect the Government's counterclaim. *See* Mot. at 7-11. Based on the terms of section 1514, the filing of a protest or a civil action contesting the denial of a protest prevents the liquidation from being "final and conclusive upon all persons (including the United States and any officer thereof." The Government does not claim that it is entitled to file a protest or that section 1581(a) provides the jurisdiction for our cause of action. Instead, the protest and commencement of this action are the predicates needed by an importer to dispute a decision by CBP. And when that importer satisfies those predicates, finality does not attach to the liquidation, *see* section 1514, thereby allowing the Government to file a counterclaim. *See* CIT Rule 13(a); 28 U.S.C. § 1583.

9

Nevertheless, Cyber Power seems to believe that the Government's ability to recover additional duties resulting from the Court's determination that the imported merchandise is subject to a classification with a higher duty rate is cut off if CBP has not applied the higher rate during the 90-day reliquidation period provided in 19 U.S.C. § 1501. Such a theory is contrary to the plain meaning of 28 U.S.C. § 1583, which permits a counterclaim for additional duties associated with the imported merchandise that is the subject of the complaint. Further, such a theory would undermine the uniform and consistent application of the customs laws by allowing an importer to avoid paying increased duties that this Court determined to be due.

Finally, contrary to Cyber Power's argument (Mot. at 11-14), given the lack of finality as to the liquidation of the subject merchandise, the Government is not limited to seeking duties through an action under 28 U.S.C. § 1592(d). As explained *infra*, one of the reasons for allowing a counterclaim in a section 1581(a) action is to promote judicial efficiency. Requiring the Government to burden the Court with a section 1592(d) action involving the same merchandise when the vehicle of a counterclaim is available is contrary to congressional intent. Cyber Power is correct, however, that our counterclaim is not based on section 1592(d).

**B.  The Proper Classification Of The Merchandise Is The Issue Before The Court**

In the only count of its complaint, Cyber Power asserts that Section 301 duties should not have been assessed against the subject merchandise because that merchandise satisfies the requirements of subheading 9903.88.33, HTSUS, an exclusion from Section 301 duties. Subheading 9903.88.33, HTSUS, provides an exclusion for:

> Insulated electric conductors for a voltage not exceeding 1,000V, fitted with connectors of a kind used for telecommunications, each valued over $0.35 but not over $2 (described in statistical reporting number 8544.42.2000).

1.   The Classification Of The Merchandise Is Subject To *De Novo* Review

To support its claim of a Section 301 exclusion, Cyber Power must establish by a preponderance of the evidence that the subject merchandise is classifiable in subheading 8544.42.20, HTSUS.  However, Cyber Power cannot rest on CBP's liquidation under subheading 8544.42.20, HTSUS, as proof that such a classification is correct.  Instead, to determine the proper classification of the merchandise, the Court conducts a *de novo* review.

Cyber Power recognizes that "this Court has an obligation under *Jarvis Clark, Inc. v. United State*s, 733 F.2d 878 (Fed. Cir. 1984) to find the 'correct' result."  Mot. at 11.[4]  If, in reaching that correct result, the Court determines that a different classification requiring additional duties is applicable, it could only award relief to the Government if the Government has asserted a counterclaim.  By commencing a counterclaim consistent with CIT Rule 13(a),[5] over which this Court has jurisdiction pursuant to 28 U.S.C. § 1583(1), the Government has protected its right to receive any increased duties, interest, and fees that flow from the Court's decision.

2.   The Purpose Of 28 U.S.C. § 1583

Under the customs laws, the Government is entitled to duties owed on imported merchandise after liquidation or reliquidation.  *See* the HTSUS, codified at 19 U.S.C. § 1202 *et seq*.  The proper amount of duties is determined by the rate of duty associated with the

---

[4] Cyber Power argues that *Jarvis Clark* does not confer a cause of action on the Government. Mot. at 11.  As discussed *infra*, our counterclaim arises under 19 U.S.C. § 1202 *et seq.*; 19 U.S.C. § 1503; and 19 U.S.C. § 1514(a).

[5] Rule 13(a) provides:

A pleading must state as a counterclaim any claim that at the time of its service the pleader has against an opposing party if the claim: (1) involves the imported merchandise that is the subject matter of the civil action, or (2) is to recover on a bond or customs duties relating to such merchandise.

subheading that correctly describes the imported merchandise.  19 U.S.C. § 1202.  Section 1503 (Dutiable Value) states "[t]hat if reliquidation is required pursuant to a final judgment or order of the United States Court of International Trade which includes a reappraisement of imported merchandise, the basis for such assessment shall be the final appraised value determined by such court."  19 U.S.C. § 1503.  If the Court determines that the correct subheading is different from and has a higher duty rate than the one under which the goods were classified at liquidation, then, consistent with section 1514(a) and/or section 1503, CBP is charged with enforcing the tariff correctly and receiving the duties it was entitled to had the goods been properly classified when entered by the importer.  19 U.S.C. § 1514(a) ("When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.")

Our counterclaim asserts that, based on our enforcement of the HTSUS, we are entitled to receive additional duties should the Court agree that merchandise is properly classified under subheading 8544.42.90, HTSUS.  Our counterclaim gives effect to the will of Congress. Historically, when the Court determined that the proper classification of imported merchandise called for an increase in duties, "the court could only dismiss the action, without requiring the plaintiff to pay any additional duties." *Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1276 n.17 (Ct. Int'l Trade 2009).  "Section 1583 remedied this problem and permits the [G]overnment to 'assert[ ] a claim that would allow the court to make the proper determination and accordingly would enable the Government to collect the full amount of duties.' H.R.Rep. No. 96–1235, at 36 (1980)." *Id.; see also Tikal Distributing Corp. v. United States*, 93 F. Supp. 2d 1269, 1275 n.4 (Ct. Int'l Trade 2000).

Indeed, the legislative history behind section 1583 explains:

> The United States may defend the action either by claiming that the original valuation is correct or by asserting in the alternative that if the original valuation is incorrect, the goods should be valued at an amount higher than that claimed by the plaintiff.  In cases in which the plaintiff has demonstrated that the original valuation is erroneous, but where the Government has proven a higher valuation, the Customs Court has not required the plaintiff to pay the higher duties.  In those instances, the court has dismissed the action.  However, all subsequent imports of the same goods are valued at the higher tariff rate proved by the Government at trial.  Under the provision proposed in H.R. 6394, it would be possible for the court to rule that a plaintiff should pay additional duties to the United States on the basis of the counterclaim asserted and proved by the United States.  That provision would allow the counterclaim to be asserted not only with regard to the particular matter which gave rise to the civil action being litigated but also as to all other civil actions pending in the Court of International Trade involving import transactions by the same plaintiff.  Several witnesses strongly recommended the deletion of this provision from the legislation.  They claimed that the counterclaim provision would permit the Government to exact additional duties from importers months after the importer has moved his goods into the stream of commerce at a price that accounts for the duties assessed by the Customs Service.

H.R.Rep. No. 96–1235, at 35 (1980).  Although the legislative history speaks in terms of a valuation case, its analysis applies with equal force to a classification case.  Thus, by enacting section 1583, Congress recognized the Government's right to payment of additional duties, interest, and fees if the Court's determination so warrants.

Moreover, the congressional scheme permitting the Government to recover additional duties, interest, and fees through the vehicle of a counterclaim is further supported by 28 U.S.C. § 2643(b), which permits the Court to enter a money judgment "for or against the United States or any other party in any counterclaim, cross-claim, or third-party action under section 1583 of this title."

Cyber Power complains that our assertion of a counterclaim in actions brought by

13

importers to challenge a denied protest "would deny such importers Equal Protection of the Laws" and potentially create two separate classes: those exercising the right to seek judicial review and those who do not, thereby enjoying the protection of finality.  Mot. at 1, 20.  But Congress addressed this concern by promulgating section 1583 narrowly.

Under the initial draft of section 1583, the court could have ruled that plaintiff had to pay the United States additional duties not only as to the subject matter of the action, but also other actions in the CIT involving the plaintiff's import transactions.  H.R.Rep. No. 96–1235 at 35. The Association of the Customs Bar argued that this provision would "have a chilling effect on the commencement of litigation in the Court of International Trade" because litigants would be exposed to liability, especially if the Government were raising challenges to importations that were not the subject of plaintiff's complaint.  *Id.* at 35-36.  Like Cyber Power, here, others argued that the Government has "ample opportunity prior to and after liquidation to reassess the initial valuation or classification and should not be accorded still another opportunity."  *Id.* at 36. However, representatives of the importing community "agreed that limiting the counterclaim to 'the imported merchandise' would be a reasonable limitation."  *Id.*

Moreover, further testimony provided that:

> there is nothing extraordinary about litigants and their lawyers having to balance the likely benefits of proposed litigation against the possibility of counterclaims.
>
> On the one hand, by allowing some counterclaims involving the same importer which we do propose be done, you're in the position of consolidating litigation, getting disputes between the same parties resolved more quickly.  The fact that somebody has to consider whether they are subject to claims when they bring suit is the kind of judgment lawyers are called upon to make in a whole host of occasions when they have to advise clients whether it's prudent or not prudent to come forward and bring litigation.

*Id.*  The same concerns Cyber Power raises here were considered by Congress in narrowly

tailoring section 1583.  All importers should be aware that by protesting and bringing an action,

they face the potential of a counterclaim from the Government.  Thus, whether to protest and

commence a court action is simply a decision based on weighing the costs and benefits of doing

so.  All importers are similarly situated in doing such an analysis.

## III.    THE GOVERNMENT'S COUNTERCLAIM STATES A CAUSE OF ACTION

Cyber Power contends that its motion to dismiss our counterclaim should be granted

because the counterclaim failed to state a claim for which relief can be granted.  Mot. at 3-14.

Cyber Power is wrong.

To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter,

accepted as true, to state a claim of relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

(internal quotations omitted).  In other words, the factual allegations must be sufficient "to raise a

right to relief above the speculative level on the assumption that all the allegations in the

[counterclaim] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.  Our counterclaim

satisfies the *Iqbal-Twombly* standard because it provides enough factual matter to establish our

right to relief: collecting the 2.6 percent duty difference between subheading 8544.42.90 and

subheading 8544.42.20 if the Court determined that the subject merchandise is classified under

subheading 8544.42.90.

Specifically, our counterclaim[6] states, among other things, that:

- The Government brings this counterclaim pursuant to 28 U.S.C. §§

---

[6] Cyber Power states that our counterclaim does not indicate whether it is against the 7 models of
cables involved in the protests or all the imported cables covered by the protested entries even if
not subject to Cyber Power's protest. Mot. at 3.  However, paragraph 6 of our counterclaim states
that the merchandise at issue in our counterclaim is "the same in all material respects as the
merchandise described in paragraph 6 of the Complaint."  Paragraph 6 of the Complaint covers 7
models of cables.  Moreover, as reflected in CIT Rule 13(a) and section 1583, the counterclaim
must involve the same merchandise that is the subject of the civil action.  Cyber Power limited its
protest and action to 7 models of cables.

1583(1) & 2643(b) in order to reclassify the imported merchandise at issue under subheading 8544.42.90, Harmonized Tariff Schedule of the United States (HTSUS) and to recover the 2.6 percent *ad valorem* duty applicable under that subheading. (CC at ¶ 1);

- Cyber Power is the importer of record of the merchandise, which is the subject of this action, and is the real party in interest. (CC at ¶ 3);

- [T]he Government, through U.S. Customs and Border Protection is charged with enforcing the HTSUS, including classifying goods imported into the United States. (CC at ¶ 4);

- The merchandise covered by the ten entries referenced in paragraph 5 is the same in all material respects as the merchandise described in paragraph 6 of the Complaint. (CC at ¶ 6);

- The merchandise covered by the entries at issue in this case was classified at liquidation under subheading 8544.42.20, HTSUS. (CC at ¶ 7);

- On November 4, 2020, defendant/counterclaim plaintiff denied plaintiff/counterclaim defendant's protest stating that:

> Protestant did not substantiate that the cables are used for transmitting data, voice, or video and failed to show that the subject cables meet the definition of telecommunications. Therefore, CBP has determined that the correct classification for the cables presented is HTSUS 8544.42.9090.

(CC at ¶ 12);

- Subheading 8544.42.90, HTSUS, is dutiable at 2.6 percent *ad valorem*, and is subject to Section 301 duties under subheading 9903.88.03, HTSUS, at the rate of 10 percent *ad valorem* for merchandise entered prior to May 10, 2019, and 25 percent *ad valorem* for merchandise entered on or after May 10, 2019. (CC at ¶ 17);

- The subject merchandise is classifiable under subheading 8544.42.90, HTSUS, and dutiable at 2.6 percent *ad valorem*. (CC at ¶ 18);

- The subject merchandise covered by Entry Nos. 791-19115264, 791-19126444, and 791-19130040 was entered prior to May 10, 2019 and is subject to Section 301 duties under subheading 9903.88.03, HTSUS, at the rate of 10 percent *ad valorem*. (CC at ¶ 19); and

- The subject merchandise covered by Entry Nos. 791-19142664, 791-24412607, 791-24442745, 791-24483814, 791-24482881, 791-24572426, and 791-24556528 was entered on or after May 10, 2019 and is subject to Section 301 duties under subheading 9903.88.03, HTSUS, at the rate of 25 percent *ad valorem*. (CC at

¶ 20).

Construing these factual allegations as true and viewing them in the light most favorable to the Government (*i.e.*, non-moving party), the Court should deny Cyber Power's motion to dismiss.  These allegations state a plausible claim for relief: the Government's right to collect the difference in duty between subheading 8544.42.90 and subheading 8544.42.20 is consistent with its duty to enforce the HTSUS.  Nor can Cyber Power dispute that the Government is entitled to receive liquidated duties due under the tariff.  Indeed, Cyber Power acknowledges it paid such duties in commencing this action.  Compl. ¶ 2.  Therefore, the grounds for our claim reside in the tariff itself and the duty rate it carries that is applicable to the imported merchandise and in our charge to enforce the customs laws such as section 1503 (reliquidation in accordance with the Court's determination).

Thus, the question here turns on whether the Government is entitled to receive additional duties if the Court agrees that the subject merchandise is classifiable under subheading 8544.42.90, and not 8544.42.20.  If subheading 8544.42.90 is applicable, then proper enforcement of the tariff would call for CBP to apply that subheading and its associated duty rate to the subject merchandise.  *See* 19 U.S.C. § 1514(a) ("When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.")  Our counterclaim asserts that, based on our enforcement of the HTSUS, we are entitled to receive these additional duties.  As such, the counterclaim has stated a claim upon which relief can be granted.

## IV.   THE GOVERNMENT'S CAUSE OF ACTION IS INDEPENDENT OF 28 U.S.C. § 1583

As we have established above, the Government's counterclaim states a cause of action.

Our cause of action arises from the Government's (through CBP) enforcement of the HTSUS, including classifying goods imported into the United States and collecting the duties associated with that classification.  Our counterclaim does not request the Court to interpret section 1583 as creating a separate cause of action.  Therefore, we do not address Cyber Power's speculative and premature argument.  *See* Mot. at 20-25.  However, should the Court find that our counterclaim fails to state a claim, we respectfully request an opportunity to amend our counterclaim to address the Court's findings, including, if appropriate, whether section 1583 provides a cause of action.[7]

---

[7] We stand ready, willing, and able to provide briefing on this issue should the Court prefer.

## **CONCLUSION**

Because our counterclaim contains sufficient factual allegations to support a non-speculative right to relief, Cyber Power's motion to dismiss should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-in-Charge
        International Trade Field Office

        /s/ Beverly A. Farrell
        BEVERLY A. FARRELL
        Senior Trial Attorney
        U.S. Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza, Room 346
        New York, New York 10278
        Tel.: (212) 264-9230
        Attorneys for Defendant

Dated: March 15, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. CLAIRE R. KELLY, *JUDGE*

_____
                                                          :
CYBER POWER SYSTEMS (USA) INC.,        :
                                                          :
                    Plaintiff/Counterclaim        :
                    Defendant                        :
                    v.                                   :        Court No. 21-00200
                                                          :
UNITED STATES,                                  :
                                                          :
                    Defendant/Counterclaim     :
                    Plaintiff.                          :
_____:

## CERTIFICATE OF COMPLIANCE

I, BEVERLY A. FARRELL, a senior trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for Defendant/Counterclaim Plaintiff's Memorandum of Law in Opposition to Plaintiff/Counterclaim Defendant's Motion to Dismiss Counterclaim, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 5,628 words.

                                        /s/ Beverly A. Farrell
                                        Beverly A. Farrell