**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

```
-------------------------------------------------- X
                                                   :
CYBERPOWER SYSTEMS (USA) INC.                      :
                                                   :
        Plaintiff,                                 :
                                                   :
                                                   :
        v.                                         :        Court No. 21-200
                                                   :
                                                   :
UNITED STATES OF AMERICA                           :
             Defendant.                            :
-------------------------------------------------- X
```

## PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 1, 2025

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

ARGUMENT ................................................................................................................1

I.      The Imported Cables are Properly Classified in Subheading 8544.42.20, HTSUS, HTSUS. ...............................................................................................................1

      A.      The Cables are of a Class or Kind Principally Used as Telecommunications Cables....................................................................................................6

            1.      Use in the Same Manner that Defines the Class ........................................6

            2.      General Physical Characteristics...............................................................7

            3.      The Economic Practicality of So Using the Import ....................................7

            4.      The Expectations of the Ultimate Customers .............................................8

            5.      The Channels of Trade in Which the Merchandise Moves.........................8

            6.      The Environment of Sale ...........................................................................9

             7.      The Recognition in the Trade of the Use ....................................................9

II.     The Imported Cables are Properly Classified in Secondary Subheading 9903.88.33 or 9903.88.56, HTSUS. ........................................................................................10

III.    In the Alternative, If The Cables Are Properly Classified in Subheading 8544.42.49, HTSUS, The Court Should Not Order Additional Duties to Be Paid..............................11

CONCLUSION.............................................................................................................15

**TABLE OF AUTHORITIES**

**Cases**

*Ad Hoc Shrimp Enforcement Committee v. United States,* 578 F. Supp. 3d 1310 (Ct. Int'l Tr. 2022) ............................................................................................................................. 2

*Aromont USA, Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012). ..................................... 6

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (Fed. Cir. 1998) ................................... 10

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999).............................................. 3

*Cyber Power Systems (USA) Inc. v, United States*, 622 F. Supp. 3d 1397 (Ct. Int'l Tr. 2023) ..................................................................................................................................... 2

*Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022). ................................................................................................................................... 11

*Dependable Packaging Sols., Inc. v. United States*, 757 F.3d 1374 (Fed. Cir. 2014) .................. 6

*H.E. Lauffer Co. v. United States*, 2 C.I.T. 232 (1981). ............................................................. 2

*Hayburn's Case*, 2 U.S. 409 (1792). ......................................................................................... 13

*In re Petition of Beck*, 526 F. Supp. 2d 1291 (S.D. Fla. 2007) .......................................... 13, 14

*International Seaway Trading Inc. v. United States*, 81 Cust. Ct. 92 (1978) .............................. 2

*Jarvis Clark v. United States*, 739 F.2d 628 (Fed. Cir. 1984) .................................................. 15

*MBI Industries v. United States,* 16 C.I.T. 495 (1992). ............................................................. 2

*Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573 (Fed. Cir. 1994)........................................... 11

*Momenta Pharms. v. Teva Pharsms. USA Inc.*, 809 F.3d 610 (Fed. Cir. 2015) ...................... 11

*Morrison v. Olson*, 487 U.S. 654 (1988). ................................................................................. 13

*Muskrat v. United States*, 219 U.S. 346 (1911). ....................................................................... 13

*Processed Plastic Co. v. United States*, 29 C.I.T. 1129 (2005) ................................................ 11

*Rollix Bearing Inc. v. United States*, 15 C.I.T. 11 (1991).......................................................... 2

*United States v. Carborundum*, 63 C.C.P.A. 98 (1976)............................................................. 6

*United States v. Ferreira*, 54 U.S. 40 (1852)........................................................................... 14

*United States v. New York Merchandise Co.*, 58 C.C.P.A. 53 (1970) ......................................... 2

*Universal Electronics Inc. v. United States*, 112. F.3d 488 (Fed. Cir. 1997). ......................... 11

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)..................................................................................... 13

**Statutes**

19 U.S.C. § 1202.......................................................................................................................... 12

19 U.S.C. § 1504.......................................................................................................................... 14

19 U.S.C. § 1514.......................................................................................................................... 15

19 U.S.C. § 1592.......................................................................................................................... 12

28 U.S.C. § 1581............................................................................................................................ 1

28 U.S.C. § 2639............................................................................................................................ 2

28 U.S.C. § 2640.......................................................................................................................... 10

28 U.S.C. § 2643.......................................................................................................................... 14

46 U.S.C. § 80102........................................................................................................................ 14

**Other Authorities**

*Customs Headquarters Ruling H024054 of Sept. 3, 2010* ...................................................... 4, 5

*Customs Headquarters Ruling H029719 of Nov. 7, 2008* .......................................................... 5

ii

*Fix Battery Issues*, Verizon,
  https://www.verizon.com/foryourhome/vzrepair/flowengine/UFDService.aspx?Keywor
  d=FIX_BATT (last visited August 1, 2025)....................................................................... 9
*New York Customs Ruling N177229 of Aug. 8, 2011* ............................................... 4, 5
*New York Customs Rulings N158935 of Apr. 29, 2011* ........................................... 4, 5
*New York Customs Rulings NY J80385 of Jan. 30, 2003)* ......................................... 4
PowerTec Solutions International, 7P UPS to ONT Blunt End,
  https://www.powertecsolutions.net/solutions/7p-ups-to-ont-blunt-end-telemetry-cable/
  (last visited August 1, 2025). ................................................................................... 10

**Regulations**

47 C.F.R. § 2.100 ........................................................................................................ 3

**Constitutional Provisions**

U.S. Const. art. III, § 1................................................................................................ 13
U.S. Const. art. 1 § 8 cl. 1 .......................................................................................... 12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

```
-------------------------------------------------------  X
                                                         :
CYBERPOWER SYSTEMS (USA) INC.                            :
                                                         :
         Plaintiff,                                      :
                                                         :
                                                         :
         v.                                              :      Court No. 21-200
                                                         :
                                                         :
UNITED STATES OF AMERICA                                 :
         Defendant.                                      :
-------------------------------------------------------  X
```

### PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In accordance with Rules 7 and 56 of the Rules of the United States Court of International Trade (""USCIT R.""), Plaintiff, CyberPower Systems (USA) Inc., ("CyberPower"), hereby responds to the Government's Cross-Motion for Summary Judgment in this 28 U.S.C. § 1581(a) protest action, and replies in support of Plaintiff's Motion for Summary Judgment. In accordance with USCIT R. 56.3, Plaintiff submits the attached Response to the Defendant's Statement of Material Facts Not in Dispute.

### ARGUMENT

### I.    The Imported Cables are Properly Classified in Subheading 8544.42.20, HTSUS, HTSUS.

All seven of the cables at issue are properly classified under 8544.42.20, HTSUS as "Other electric conductors of a voltage less than 1000V; Fitted with connectors; of a kind used in telecommunications", duty free. The Government refutes its liquidated classification, arguing that "the class of goods that the imported cables belong are power cables for electrical appliances, and asserts classification under subheading 8544.42.29, HTSUS which carries an ordinary duty rate of 2.6% ad valorem." Government's Brief (Gov.'s Br.") at 19, ECF 61.  From this, the Government asserts that the cables do not qualify for the Section 301 tariff exclusion invoked by Plaintiff.

Initially, we note that the Government's liquidated classification – which Plaintiff supports – is entitled to a statutory presumption of correctness, *see* 28 U.S.C. § 2639(a). This presumption assumes not only the correctness of the Government's ultimate determination, but that the Government has found every fact necessary to support that classification. *Rollix Bearing Inc. v. United States*, 15 C.I.T. 11 (1991). The presumption carries evidentiary weight, *see United States v. New York Merchandise Co.*, 58 C.C.P.A. 53 (1970), and a party seeking to overcome it bears the burden of introducing evidence to counter one or more of the presumptions underlying the Government's classification. *See, e.g., Cyber Power Systems (USA) Inc. v, United States*, 622 F. Supp. 3d 1397 (Ct. Int'l Tr. 2023); *MBI Industries v. United States,* 16 C.I.T. 495 (1992).

By contrast, alternative classifications proposed by the Government, which were not the classifications asserted in liquidation, are not entitled to the statutory presumption of correctness. *See, e.g*., *International Seaway Trading Inc. v. United States*, 81 Cust. Ct. 92 (1978); *see also H.E. Lauffer Co. v. United States*, 2 C.I.T. 232 (1981).

Plaintiff is constrained to point out that the Government has offered no evidence that undercuts the statutory presumption of correctness for the liquidated classification under subheading 8544.42.20, HTSUS.  It has introduced no documentary, physical or other exhibits in support of its opposition to classification under the liquidated provision. It has produced no testimony, lay or otherwise. It is well-established that the post-hoc rationalizations of counsel do not suffice to support challenged agency action. *Ad Hoc Shrimp Enforcement Committee v. United States,* 578 F. Supp. 3d 1310 (Ct. Int'l Tr. 2022).  This is even more true when the post-hoc rationalization is offered in support of action the Government did not take. Working under the burden of 28 U.S.C. § 2639(a), which creates a fact presumption that can only be overcome by the introduction of contrary factual evidence, the Government has failed to overcome the presumption

of correctness attaching to its liquidation decision. As to the basic classification of the cables under subheading 8544.42.20, HTSUS, the Court must find for the Plaintiff based on the Government's failure to proffer evidence sufficient to overcome the statutory presumption of correctness. Nonetheless, we discuss the fallacy of the Government's position on this issue.

The Government's position on the Chapter 85 classification issue is not well taken. Its proffered alternative classification is incorrect, does not describe Plaintiff's merchandise and the phrase "of a kind or use in telecommunications." "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). In interpreting the terms of a tariff provision "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.*

The parties largely agree that  the definition of telecommunication is "communication at a distance." Gov.'s Br. at 17, ECF 61. However, the Government's understanding fails to recognize the common meaning of the word to also include "technology that deals with telecommunication." As is included in both the Merriam Webster Definition and on Dictionary.com. *See* Plaintiff's Brief ("Pl.'s Br.") at 11, ECF 57. The Government also fails to recognize the meaning of telecommunications as detailed in international agreements of which the United States is a signatory. *See* 47 C.F.R. § 2.100. Article 1.3 of the Radio Regulations ("RR"), adopted by the United Nations' International Telecommunications Union ("ITU"), "telecommunication" is defined as "any transmission, emission or reception of signs, signals, writings, images and sounds or intelligence of any nature by wire, radio, optical, or other electromagnetic systems." This

definition is identical to that contained in Section 1012, Annex to the Constitution and Convention of the International Telecommunication Union (Geneva, 1992).

The requirement that a cable be "of a kind used in telecommunications" does not mean that its use must be limited to transmission of voice, video or data. Subheading 8544.42.20, HTSUS, does not say "of a kind used *for* telecommunications." According to the Government's own rulings, telecommunication cables can also connect two power sources, such as HDMI cables, and support network "long-haul and ultra long-haul transmission" like a Dynamic Optical Networking System. (*New York Customs Rulings N158935 of Apr. 29, 2011*; *New York Customs Ruling N177229 of Aug. 8, 2011*; *Customs Headquarters Ruling H024054 of Sept. 3, 2010; New York Customs Rulings NY J80385 of Jan. 30, 2003*). Similarly, all of Cyber Power's subject cables are used in telecommunications – providing vital support for cable television and broadband systems, for which they are specially designed in terms of structure (terminals) and functions. With one exception, they transmit data concerning the status and operation of devices connected to the network the ONT serves.

All but one of the subject cables transmit data in one form or another. The cables send and receive data between the ONT and the UPS to which they are connected. *See* Plaintiff's ("Pl.'s") 56.3 Statement at ¶¶ 8, 10, ECF 57-1. The cables in this case transfer data regarding the battery information to the ONT and back. *See* Pl.'s 56.3 Statement at ¶¶ 11, 13, ECF 57-1. They play a vital role in providing battery back up from a UPS in the event of a power failure so that the ONT can continue to operate or safely shut down. *Id.* The Government downplays these communications as "incidental to the main power conductors." Gov. Br. at 21. However, there is no limiting language in the subheading that would preclude the sending of data regarding power and battery status. Data is data. Data transmitted remotely is the very essence of "telecommunications." The

Government fails to point to any authority on limiting the "communication" to take place for cables to be considered telecommunications cables. On the contrary the international agreements recognize that "any" transmission qualifies as telecommunications. The cables transmit data between the battery backup unit and the ONT. This is communication at a distance. The sole purchasers of these cables are telecommunications companies and their sole use is to connect an ONT to a UPS. The use of the subject cables in telecommunication removes them from classification in the Government's proffered basket subheading 8544.42.90, HTSUS. The cables with signal wires all are properly classified under subheading 8544.42.20, HTSUS.

However, beyond the literal sending of communication, "telecommunications" common meaning includes "technology that deals with telecommunication," as defined in the Merriam Webster Dictionary and by Dictionary.com. *See* Pl.'s Br. at 11. This would include the subject cables as they assist in running an ONT and deal with assisting in communications. The principal use of Plaintiff's telecom cables is comparable to that of HDMI cables, since they are electric conductors used to transmit information from one electronic device to another. In *New York Customs Rulings N158935 of Apr. 29, 2011* and *New York Customs Ruling N177229 of Aug. 8, 2011*, the government ruled that the applicable subheading for the HDMI cable would be subheading 8544.42.20, HTSUS. In *Customs Headquarters Ruling H024054 of Sept. 3, 2010*, CBP explained that HDMI cables "allow communication between various high definition electronic devises by electronic or electric means" and therefore, fall under subheading 8544.42.40, HTSUS, which is "consistent with *Customs Headquarters Ruling H029719 of Nov. 7, 2008*, in which the government classified a USB and an Ethernet cable under the same heading."

**A.    The Cables are of a Class or Kind Principally Used as Telecommunications Cables.**

All of the cables are of a class or kind used in telecommunications, the Government's argument that cables belong to a "power cables" class or kind of goods in incorrect.  In assessing classification under a principal use provision, the court determines whether the class or kind of identified goods is commercially fungible with the imported goods in order to identify the use that exceeds any other single use. *Dependable Packaging Sols., Inc. v. United States*, 757 F.3d 1374, 1379–80 (Fed. Cir. 2014); *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312 (Fed. Cir. 2012). The group of goods at issue under Heading 8544, HTSUS is "insulated electric conductors, whether or not fitted with connectors," and particularly "Other electric conductors, for a voltage not exceeding 1000 V" which are "fitted with connectors" and "for use in telecommunications."

When analyzing whether the subject merchandise is commercially fungible, the Court generally considers the *Carborundum* factors:

> These factors include: use in the same manner as merchandise which defines the class; the general physical characteristics of the merchandise; the economic practicality of so using the import; the expectation of the ultimate purchasers; the channels of trade in which the merchandise moves; the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and the recognition in the trade of this use.

*Aromont USA, Inc*., 671 F.3d at 1313 (*citing United States v. Carborundum*, 63 C.C.P.A. 98, 102 (1976)). Consideration of these factors indicates that the subject tables are of a class used in telecommunications.

**1.    Use in the Same Manner that Defines the Class**

The cables are used to connect telecommunication devices on a network – specifically to connect an optical network terminal (ONT) to an UPS or BBU. *See* Pl.'s 56.3 Statement at ¶14,

ECF 57-1. The Government reduces the role of these cables to simply power cables. However, they provide a pivotal role in managing ONT in the event of a power loss. Cyber Power's Catalog, which identifies these cables as "telecommunications" cables, states:

> CyberPower Cable Assemblies provide connectivity between CyberShield™ DC battery backup systems, power adapters, and Optical Network Terminals (ONT). These cable assemblies are specifically designed for ONT, broadband applications, cable telephony, wireless local loop (WLL), fiber to the home (FTTH), VoDSL applications, and Integrated Access Devices (IAD) for customer premises equipment (CPE).

See Pl.'s 56.3 Statement at Ex. C at 4, ECF 57-2. These cables are used for "transmitting, receiving, or transferring information by electromagnetic means," and have no other use. *See* Gov. Brief at 18. The subject cables are used to transmit information from one electronic device to another electronic device.

### 2.    General Physical Characteristics

The cables are outfitted with specific pin connectors for connecting to specific models of ONTs. The cables at issue contain either a seven or nine pin connection. The standards for connectors are provided by ONT designers and suppliers to Cyber Power to verify that the cables will work with specific ONTs. There are general standards connectors in the industry. Opposite the ONT pin connectors are connectors to plug into the UPS. These include BUL for bullet, BRL for barrel connectors.

### 3.    The Economic Practicality of So Using the Import

The economic practicality of using the imported cables in telecommunication uses is not in dispute. As noted below, the subject cables are valued at between $0.35 and not more than $2.00 apiece. *See* Pl.'s 56.3 Statement at Ex. D, ECF 57-2. They are used to make connections between much more expensive telecommunications systems components, including ONTs and UPS or

BBU. *See* 56.3 Statement at ¶ 9, ECF 57-1. They are purchased and used in large quantities by telecommunications service providers. *See Id.* at ¶14.

### 4. The Expectations of the Ultimate Customers

As indicated in Mr. Fuehrer's deposition, the ultimate purchasers in this case are telecommunications service providers, who use the cables to connect particular ONT devices to particular UPS devices. *See* Pl.'s 56.3 Statement at ¶¶ 14, 18, ECF 57-1. The ONTs require connections having a certain number of pins, and a terminal suited to connect with the particular model of UPS at issue. *Id.* at ¶¶ 20-21. These products fully satisfy the expectations of the ultimate purchasers, the telecommunications service providers, who dictate the specifications they require the cables to meet.

### 5. The Channels of Trade in Which the Merchandise Moves

The channels of trade in which the merchandise move are specific to the needs of the telecommunications service industry. While Cyber Power offers the cables for sale on its website, the prices are set much higher than the price at which they can be obtained from wholesale distributors of telecommunications support equipment. *See* Pl.'s 56.3 Statement at ¶ 22, ECF 57-1. In contrast to many of Cyber Power's other products, such as surge voltage protectors, which are sold to and through distributors and retail outlets, such as The Home Depot or Walmart, these cables are not generally offered for retail sale. *See Id.* at ¶ 14. The telecom "cables are sold along with the battery backup systems to the service [providers]." *See* 56.3 Statement Ex. A at 23, ECF 57-2. This is because if, for example, a cable broadband customer had a problem with the connection to their ONT, they would not attempt to purchase a replacement cable but would expect the broadband utility to repair or replace it, since the ONT is generally the utility's property.

Verizon, for example, lets customers know how to make simple corrections to the ONT and battery connection, and indicates that the utility will send an agent to perform repairs if needed: Use the Verizon Troubleshooter to quickly resolve troubles including loss of power to the Battery Backup Unit, replacing and disposing of the battery and silencing the beeping alarm. You can do all that and more, without waiting for a live agent! You can expect to fix most issues in the troubleshooter in under five minutes. If you need further assistance we will connect you to an agent. *Fix Battery Issues*, Verizon, https://www.verizon.com/foryourhome/vzrepair/flowengine/UFDService.aspx?Keyword=FIX_B ATT (last visited August 1, 2025).

### 6.    The Environment of Sale

The environment of sale of these products is a strictly business-to-business sales model. While Cyber Power lists the cables on their website, they do not offer these products at retail or to the general public. *See* Pl.'s 56.3 Statement at ¶¶ 14 and 22, ECF 57-1. The cables are sold in boxes containing large quantities of cables each, a quantity suitable for a broadband installer, but unnecessary for a retail customer. *Id.* The goods are sold in an environment suitable to procurement by a telecommunications services providers.

### 7.    The Recognition in the Trade of the Use

The use of these cables in the telecommunications trade is well recognized. Broadband providers all offer ONT terminals to receive telecommunications signals into a house or other facility, and all offer battery backups. *See* Pl.'s 56.3 Statement at ¶ 14, ECF 57-1. Cables of this kind are needed to make connections between these components. The use of these types of cables for telecommunications uses is well established. Other companies offer power supply backups for ONTs and the cable to connect the power supply and ONT. *See, e.g.,* PowerTec Solutions

International, 7P UPS to ONT Blunt End, https://www.powertecsolutions.net/solutions/7p-ups-to-ont-blunt-end-telemetry-cable/ (last visited August 1, 2025). These products are recognized for their use in this trade and are listed in Cyber Power's catalog and website as telecommunication cables. *See* Pl.'s 56.3 Statement at ¶ 19, ECF 57-1. The telecommunication providers approach Cyber Power to purchase these cables for the specific use of connecting an ONT to an UPS or BBU. *See* Pl.'s 56.3 Statement at ¶ 20, ECF 57-1.

## II.    The Imported Cables are Properly Classified in Secondary Subheading 9903.88.33 or 9903.88.56, HTSUS.

While Government's argument against principal classification of the cables under subheading 8544.42.20, HTSUS, falls based on its failure to rebut the statutory presumption of correctness, and for the reasons set out above, the facts regarding secondary classification under the Section 301 exclusion provided in subheadings 9903.88.33 and 9903.88.56, HTSUS are not in dispute. The cables are terminated cables designed for voltages of less than 1000 V or less. They are valued within the ranges set out in the subheading 9903.88.33 and 9903.88.56, HTSUS exclusions.   The Government argues that the cables would be properly classified under subheadings 8544.42.90 and 9903.88.03, HTSUS. The article description of subheading 9903.88.03, HTSUS, and the Chapter Notes states that articles that fall under subheading 9903.88.03, HTSUS would be excluded from the additional 25 percent ad valorem rate of duty. HTSUS Chapter 99 Note 20(e). Thus, we must first analyze whether the imported cables could fall under subheading 9903.88.33 or 9903.88.56.

Where there are no material facts in dispute, this Court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (reviewing CBP's classification decision de novo on the record made before it, 28 U.S.C. § 2640(a)(1)); *see also*, *Processed Plastic Co. v. United States*, 29 C.I.T. 1129, 1130 n.4

(2005), aff'd, 473 F.3d 1164 (Fed. Cir. 2006). Where there is no genuine dispute as to any material fact, on a motion for summary judgment, CBP will not receive the benefit of a presumption of correctness. *Id.* at 1131, n.5; *see also Universal Electronics Inc. v. United States*, 112. F.3d 488, 491 (Fed. Cir. 1997).

Once it is established that the cables are principally classified under subheading 8544.42.20, HTSUS, there is no material issue of fact regarding the question of secondary classification under subheading 9903.88.33 or 9903.88.56, HTSUS and the exclusion provided thereby. The exclusion provides for ""Insulated electric conductors for a voltage not exceeding 1,000 V, fitted with connectors of a kind used for telecommunications, each valued over $0.35 but not over $2 (described in statistical reporting number 8544.42.2000)." Once it is established that the cables are for use in telecommunications – and defendant has offered no proof of any non-telecommunications use – there is no dispute that the cables are for voltage under 1000V and valued between $0.35 and $2.00. Summary judgment for plaintiff on the secondary classification is thus appropriate.

## III.    In the Alternative, If The Cables Are Properly Classified in Subheading 8544.42.49, HTSUS, The Court Should Not Order Additional Duties to Be Paid.

As an initial matter, CyberPower notes that this Court has dismissed the Government's counterclaim in this litigation and redenominated it as a defense. *Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022). This is settled law of the case and under the "law of the case" doctrine, will usually not be revisited by the Court. *See, e.g., Momenta Pharms. v. Teva Pharsms. USA Inc.*, 809 F.3d 610 (Fed. Cir. 2015): *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994). Notwithstanding, the Government urges this court to

reclassify the cables at bar under subheading 8544.42.49, HTSUS and award it additional duties in the amount of 2.6% ad valorem.

This is a demand in the nature of a counterclaim, and this Court has already ruled that Defendant has no cause of action to pursue a counterclaim. Nonetheless, Defendant asks this Court to fashion an unprecedented remedy where a tax would be levied not by a taxing agency of the Federal government, but rather by a Court in the first instance. To take such action would be a violation of the Constitutional doctrine of separation of powers, and would have a chilling legacy on future litigants before this Court.

Were the Court to follow the Government's request and assess a duty that CBP, the taxing agency, did not assess, it would create significant separation of powers issues. Article I of the Constitution grants Congress the sole power to impose duties. U.S. Const. art. 1 § 8 cl. 1. Congress has exercised this power through the Tariff Act of 1930, as amended, which includes the HTSUS, 19 U.S.C. § 1202. Through the Tariff Act, Congress has delegated the authority to assess and collect duties to CBP, specifying the procedures to be followed in making such assessments and imposing clear limitations on CBP's powers.

By contesting CBP's assessments, which are "final", an importer must adhere to a carefully designed system of duty assessment under Congress' Article I powers. The Tariff Act does not grant the Government the right to recover duties that CBP declined or failed to assess in its final liquidation determination. Except for 19 U.S.C. § 1592(d), which the parties agree is not applicable here, the Government has not identified any other statute that does so. By requesting that the Judicial Branch assess duties for the first time, the Government would have this Court overstep its constitutional boundaries. As the Supreme Court has noted "when a party seeks to assert an implied

cause of action under a Federal statute, separation of power are or should be the central analysis." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

The separation of powers analysis is clear. Under Article 1 of the Constitution, only Congress may pass a law assessing duties. Allowing this Court to impose a tax not levied by the taxing agency would violate this mandate by our nation's founders. "It is the governing principle of our republic that our federal government is divided into three distinct and independent branches that abstain from and oppose encroachment on each other." *In re Petition of Beck*, 526 F. Supp. 2d 1291, 1301 (S.D. Fla. 2007) (citing *Hayburn's Case*, 2 U.S. 409, 410 (1792)). "The judicial power of the United States shall be vested in one supreme Court and in such inferior Courts as Congress may from time to time ordain and establish." *In re Petition of Beck,* 526 F. Supp. 2d 1302 (S.D. Fla. 2007); *see also* U.S. Const, art. III, § 1. The term "judicial power … is defined as the power to hear and determine those matters which affect life, liberty, or property, by declaring for the parties what the law is, and their rights in conformity thereto" *Id.* at 1302, see also *Muskrat v. United States*, 219 U.S. 346, 355 (1911). "Neither the legislative nor the executive branches, can constitutionally assign to the judicial any duties, but such as are properly judicial, and to be performed in a judicial manner." *In re Petition of Beck*, 526 F. Supp. 2d 1302 (S.D. Fla. 2007) (citing *Hayburn's Case*, 2 U.S. 409, 410 (1792)); *see also Morrison v. Olson*, 487 U.S. 654, 677 (1988). Stated differently, this Court is not a taxing body. It is not the province of this Court to impose taxes which are otherwise administratively time-barred.

Separation of Powers issues arise "when a non-adjudicatory function that a court is charged to perform is not simply incidental to the judicial action, but is the very nature of the act that Congress has called upon the judiciary to perform." *In re Petition of Beck*, 526 F. Supp. 2d 1303 (S.D. Fla. 2007); *see, e.g., Hayburn's Case*, 2 U.S. at 409-10; *United States v. Ferreira*, 54 U.S.

40, 46-48 (1852). In *In re Petition of Beck*, the Court ultimately held that it lacked the power to issue licenses, as directed under 46 U.S.C. § 80102. The court said "the power to regulate the nation's waterways and pass laws circumscribing the commercial navigation thereof is within the exclusive purview of Congress." *In re Petition of Beck*, 526 F. Supp. 2d 1303 (S.D. Fla. 2007) (citing *Gibbons v. Ogden*, 22 U.S. 1 (1824)).

The Court ultimately held that "the issuance of licenses for salvaging … is not an action taken in furtherance of carrying out a judicial act or part of the Court's governance of the proceedings before it" because doing so "is a solitary executive action akin to an administrative proceeding." *In re Petition of Beck*, 526 F. Supp. 2d 1304 (S.D. Fla. 2007), CBP asked the Court to do the exact same thing in this case. The assessment of duties is a Congressional function under the Constitution. The executive, through CBP, has been delegated this authority. CBP's request to have Plaintiff pay additional duties in this case is the same as asking a Court to undertake an Executive Branch administrative function, a notion which has been rejected by Courts. CBP has a process to extend liquidations in order to make proper assessments of duties under 19 U.S.C. § 1504. It is a violation of the U.S. Constitution for an agency to rely on a Court to fix what it had failed to do administratively in dealing with is duties. The only case or controversy before this Court under Art. III of the Constitution is the denial of Plaintiff's protest.

Furthermore, the Court's obligation to find the correct answer in every case, as established in *Jarvis Clark*, does not grant it the power to assess duties not imposed by CBP during liquidation. The *Jarvis Clark* rule stems from the Court's 28 U.S.C. § 2643(b) remand power, which allows the Court to order administrative or judicial procedures if it cannot determine the correct outcome. If it is determined through these proceedings that CBP assessed fewer duties than it should have, it simply means that there was no protestable decision "adverse to the importer" as per 19 U.S.C.

§ 1514(a). In such cases, the only appropriate action for the Court to take is to uphold the denial of the protest and dismiss the Plaintiff's case. The *Jarvis Clark* rule does not grant the Court power to assess additional duties, but to provide guidance for future administrative actions *Jarvis Clark v. United States*, 739 F.2d 628, 629-630 (Fed. Cir. 1984) (*Jarvis Clark II*).

However, the Government's naked request that the Court exercise judicial power in disregard of the Constitution and the statutory finality imposed by 19 U.S.C. § 1514(a) and award additional duties without any statute granting the Government a cause of action for those duties would violate separation of powers principles.

The Government's arguments overstep the carefully crafted Congressional scheme for duty assessment and seek to have duties imposed, for the first time, by the Judicial Branch. This request violates the separation of powers principle, as it asks the Judicial Branch to assess duties that CBP declined or failed to assess in its final determination, without any statutory basis for doing so. The government seeks to fashion some judicial tax assessment remedy other than by counterclaim, this effort must fail. Revenue law is entirely a creature of statute, originating under Article 1 of the Constitution. The Court's obligation to find the correct answer in every case does not grant it the power to impose duties not assessed by CBP during liquidation, and any attempt to do so would undermine the Constitution's separation of powers framework.

## CONCLUSION

For the reasons set out herein, Plaintiff submits that summary judgment should be entered in its favor and its protest sustained and the Cross Motion for Summary Judgment by the Government should be denied.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 1, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

------------------------------------------------------------------ X
:
CYBERPOWER SYSTEMS (USA) INC.                                      :
:
      Plaintiff,                     :
:
      *v.*                           :      **Court No. 21-200**
:
UNITED STATES OF AMERICA                                           :
      Defendant.                    :
------------------------------------------------------------------ X

## CERTIFICATE OF COMPLIANCE

      Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 4,954 words.

                       Respectfully submitted,

                       /s/ Patrick B. Klein
                       Patrick B. Klein