UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Court No. 21-00200 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*

MATHIAS RABINOVITCH
VALERIE SORENSEN-CLARK                Trial Attorney
Office of the Assistant Chief Counsel        U.S. Department of Justice, Civil Division
International Trade Litigation                Commercial Litigation Branch
U.S. Customs and Border Protection          26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0484
December 19, 2025                            *Attorneys for Defendant*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 3

   I.    THIS COURT'S REVIEW IS *DE NOVO* AND THE PRESUMPTION OF
CORRECTNESS DOES NOT APPLY ........................................................... 3

   II.   CYBER POWER'S CABLES ARE NOT CLASSIFIED IN SUBHEADING
8544.42.20, HTSUS ..................................................................................... 5

   III.  THE COURT CAN AND SHOULD ORDER CYBER POWER TO PAY
ADDITIONAL DUTIES ................................................................................ 9

CONCLUSION........................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Enforcement Committee v. United States,*
578 F. Supp. 3d 1310 (Ct. Int'l Tr. 2022) ...................................................................... 3

*BASF Corp. v. United States,*
427 F. Supp. 2d 1200 (Ct. Int'l Trade 2006) .............................................................. 5

*Bausch & Lomb, Inc. v. United States,*
957 F. Supp. 281 (Ct. Int'l Trade 1997), *aff'd,* 148 F.3d 1363 (Fed. Cir.1998) ........................... 3

*Brother International Corp. v. United States,*
248 F. Supp. 2d 1224 (Ct. Int'l Trade 2002) .............................................................. 4

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156 (1962) ........................................................................................ 3

*CamelBak Prods., LLC v. United States,*
649 F.3d 1361 (Fed. Cir. 2011) ........................................................................... 3

*Clarendon Marketing, Inc. v. United States,*
955 F. Supp. 1501 (Ct. Int'l Trade 1997) ................................................................. 5

*Cyber Power Systems (USA) Inc. v. United States,*
586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) ........................................................ 9, 13

*Hayburn's Case,*
2 U.S.  (1792) ............................................................................................ 12

*In re Petition of Beck,*
526 F. Supp. 2d  (S.D. Fla. 2007) .................................................................... 11, 12

*Jarvis Clark Co. v. United States,*
8 C.I.T. 280 (1984) ...................................................................................... 10

*Jarvis Clark Co. v. United States,*
733 F.2d 873 (Fed. Cir. 1984) ..................................................................... 4, 12, 13

*Keystone Automotive Operations, Inc. v. United States,*
732 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) .............................................................. 3

*Marathon Oil Co. v. United States,*
93 F.Supp.2d 1277 (Ct. Int'l Trade 2000) ................................................................. 4

*Peerless Clothing Int'l, Inc. v. United States,*
602 F. Supp. 2d 1309 (Ct. Int'l Trade 2009) .............................................................. 3

*Primal Lite, Inc. v. United States*,
22 C.I.T. 697 (1998) *aff'd*, 182 F.3d 1362 (Fed. Cir. 1999) ........................................6

*Roche Vitamins, Inc. v. United States*,
791 F. Supp. 2d 1315 (Ct. Int'l Trade 2011) ...............................................................4

*Second Nature Designs Ltd. v. United States*,
654 F. Supp. 3d 1301 (Ct. Int'l Trade 2023) .............................................................12

*United States v. Ferreira*,
54 U.S. 40 (1851)........................................................................................................12

*Universal Electronics, Inc. v. United States*,
20 C.I.T. 337 (1996) .....................................................................................................5

*Universal Electronics Inc. v. United States*,
112 F.3d 488 (Fed. Cir. 1997).......................................................................................4

**Harmonized Tariff Schedule Of The United States**

Additional Rules of Interpretation 1(a)......................................................................6, 7

**Chapter 84**

Heading 8414

Subheading 8414.59.15.....................................................................................................7

**Chapter 85**

Heading 8504

Subheading 8504.40.85.....................................................................................................7

Subheading 8504.50.40.....................................................................................................7

Heading 8544

Subheading 8544.42.20............................................................................................*passim*

Subheading 8544.42.90............................................................................................*passim*

**Chapter 90**

Heading 9030

Subheading 9030.40.00.....................................................................................................7

**Chapter 99**

Heading 9903

Subheading 9903.88.03 ........................................................................................... 9

Note 20(ll)(61) ................................................................................................. 1, 9

**Statutes**

19 U.S.C. § 1514(a) ..................................................................................... 12, 13

19 U.S.C. § 1515 ................................................................................................ 3

28 U.S.C. 1581 ................................................................................................... 9

28 U.S.C. § 1581(a) .......................................................................... 3, 10, 11, 12

28 U.S.C. § 1585 .............................................................................................. 12

28 U.S.C. § 2639(a)(1) .................................................................................... 4, 5

28 U.S.C. § 2640(a) ........................................................................................... 4

28 U.S.C. § 2640(a)(1) ....................................................................................... 3

28 U.S.C. § 2642(a) .......................................................................................... 10

28 U.S.C. § 2643 ......................................................................................... 11, 12

28 U.S.C. § 2643(a) .................................................................................... 11, 12

28 U.S.C. § 2643(a)(1) ....................................................................................... 9

28 U.S.C. § 2643(b) .......................................................................................... 12

28 U.S.C. § 2643(c) .......................................................................................... 12

28 U.S.C. § 2643(c)(1) ....................................................................................... 9

46 U.S.C. § 80102 ............................................................................................ 11

**Other Authorities**

H.R. Rep. 96-1235, 96th Cong., 2d Sess. 48 (1980)
*as reprinted* in 1980 U.S.C.C.A.N. 3729 ...................................................... 10

Ruling N158935 (Apr.29, 2011) ......................................................................... 8

Ruling N177229 (Aug. 8, 2011) .......................................................................... 8

Ruling H024054 (Sept.3, 2010) .......................................................................... 8

Ruling J803852 (Jan. 30, 2003) ........................................................................................ 8

Ruling H029719 (Nov. 7, 2008) ....................................................................................... 8

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 21-00200 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this reply memorandum in opposition to plaintiff's, Cyber Power Systems (USA) Inc. (Cyber Power), motion for summary judgment and in further support of our cross-motion for summary judgment.

### INTRODUCTION

As more fully set forth in our cross-motion for summary judgment, this action concerns U.S. Customs and Border Protection (CBP)'s classification of cables used to connect Cyber Power's battery backup units (BBUs) or power adapters to a broadband service provider's optical network terminal (ONT). At issue is whether the cables are "of a kind used for telecommunications" and classified under subheading 8544.42.20 of the Harmonized Tariff Schedule of the United States (HTSUS), duty free. If so, then the subject merchandise would also qualify for an exclusion from Section 301 duties under Note 20(ll)(61) of Chapter 99, HTSUS. If not, then the merchandise is classified as "other" cables of subheading 8544.42.90, HTSUS, subject to the Section 301 duties already assessed by CBP, and to additional 2.6 percent *ad valorem* duties under Column 1 of the HTSUS.

As we explained in our cross-motion, the term "of a kind used for telecommunications" in subheading 8544.42.20 means a kind of cable that is principally used for transmitting, receiving, or transferring information (*i.e.*, voice, audio, or data) by electromagnetic means. Here, the subject cables are used to provide a continuous, uninterrupted power supply to the broadband service provider's ONT, which allows the device to continue operating during a power outage or any other disruption to the power supply. The cables are not used for transmitting, receiving, or transferring information. Although some of the cables contain wires that transmit signals to the ONT regarding the status of the battery supply, those signals are only incidental to the power transmission of the cables and do not change the principal use of the cables as power transmitting cables. The cables are thus "other" than those "of a kind used for telecommunications" and properly classified under subheading 8544.42.90, HTSUS.

As with its motion for summary judgment, plaintiff's argument in response rests on the faulty premise that the subheading covers cables of a kind use "in" telecommunications and that the term "telecommunications" in subheading 8544.42.90, HTSUS, means any technology that deals with telecommunications. Plaintiff's is wrong. The subheading covers cables of a kind used "for" telecommunications, which compels an analysis of the cables' principal use. But plaintiff wholly ignores the cable's principal use, focusing merely on the device and industry in which these cables are used. The principal use of the subject cables, however, is to power ONT devices, not transmit information. Moreover, the definition of "telecommunications" advanced by plaintiff is inconsistent with a plain reading of the tariff provision and seeks to replace the term "telecommunications" with "telecommunications apparatus." Accordingly, plaintiff's motion must be denied.

## ARGUMENT

## I.    THIS COURT'S REVIEW IS *DE NOVO* AND THE PRESUMPTION OF CORRECTNESS DOES NOT APPLY

As a preliminary matter, plaintiff misstates the standard of review when it asserts that this Court must find for plaintiff on an alleged failure by the Government to produce evidence to overcome a statutory presumption of correctness.  *See* Pl.'s Reply and Resp. to Cross-Mot. For Summ. J. ("Pl. Resp. Br.") at 2–3, ECF No. 64 (Aug. 1, 2025).  This case is before the court pursuant to 28 U.S.C. § 1581(a), following the denial of a protest under 19 U.S.C. § 1515.  In cases brought under section 1581(a), this Court will "make its determination upon the basis of the record made before [it]."  28 U.S.C. § 2640(a)(1).  Such reviews are performed *de novo*, and, in cases involving classification under the HTSUS, the Court applies the General Rules of Interpretation (GRIs) and the Additional Rules of Interpretation (ARIs) to determine the correct tariff provision and any applicable Chapter 99 exclusion.  *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011); *Bausch & Lomb, Inc. v. United States*, 957 F. Supp. 281, 284 (Ct. Int'l Trade 1997), *aff'd*, 148 F.3d 1363 (Fed. Cir. 1998); *Keystone Automotive Operations, Inc. v. United States*, 732 F. Supp. 3d 1339, 1346 (Ct. Int'l Trade 2024). This *de novo* review applies to both findings of fact and conclusions of law.[1]  *See Peerless Clothing Int'l, Inc. v. United States*, 602 F. Supp. 2d 1309, 1315 (Ct. Int'l Trade 2009) (citing 28

---

[1]  Plaintiff's post-hoc rationalization argument is misguided.  The Court's *de novo* review of CBP's classification decisions contrasts with the Court's review of agency action based on the administrative record developed before the agency.  In those cases, such as in *Ad Hoc Shrimp Enforcement Committee v. United States,* 578 F. Supp. 3d 1310 (Ct. Int'l Tr. 2022), cited by plaintiff, the Court reviews agency *decision-making* and counsel may not provide *post hoc* rationalizations in lieu of an agency's stated reasons to defend the agency action.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) (stating that "courts may not accept appellate counsel's *post hoc* rationalizations for agency action" and that an agency decision must be upheld "on the same basis articulated in the order by the agency itself").

U.S.C. § 2640(a)); *accord Roche Vitamins, Inc. v. United States*, 791 F. Supp. 2d 1315, 1319 (Ct. Int'l Trade 2011).  It is therefore the Court's independent duty to arrive at "the correct result, by whatever procedure is best suited to the case at hand."  *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).

Plaintiff further misinterprets the doctrine concerning the presumption of correctness set forth in 28 U.S.C. § 2639(a)(1).  *See* Pl.'s Resp. Br. at 2–3.  The presumption does not apply when, as here, "the Court is presented with a question of law in a proper motion for summary judgment," whereby "the statutory presumption of correctness is not relevant."  *Brother International Corp. v. United States*, 248 F. Supp. 2d 1224, 1227 (Ct. Int'l Trade 2002) (citing *Marathon Oil Co. v. United States*, 93 F.Supp.2d 1277, 1279 (Ct. Int'l Trade 2000)) (citation modified).  This is because the statutory presumption of correctness is simply "a procedural device that is designed to allocate, between the two litigants in a lawsuit, the burden of producing evidence in sufficient quantity."  *Id.* (citing *Universal Electronics Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997)).  As explained in *Universal Electronics*, "with respect to pure questions of law, such as the proper interpretation of a particular tariff provision or term [,] . . . the presumption carries no force[.]"  *Universal Electronics*, 112 F.3d at 492.

Thus, where the Court determines that there are no material facts in dispute, the presumption does not apply.  Here, there are no material facts in dispute, and the matter is ripe for summary judgment as a matter of law.  *See* Pl.'s 56.3 Statement of Material Facts Not In Dispute ("Pl.'s SOF"), ECF No. 57-1 (Mar. 28, 2025); Def.'s Responses to Pl.'s R. 56.3 Statement of Material Facts Not In Dispute ("Gov't RSOF"), ECF No. 64-1 (June 27, 2025); Def.'s Statement of Additional Undisputed Material Facts, ECF No. 64-2 (June 27, 2025)

("Gov't SOF"); Pl.'s Resp. to the Def.'s R. 56.3 Statement of Material Facts Not In Dispute, ECF No. 64-1 (Aug. 1, 2025) ("Pl.'s RSOF").

Finally, the "presumption of correctness does not attach to Customs' classification . . . when Customs admits that its classification is erroneous." *Universal Electronics, Inc. v. United States*, 20 C.I.T. 337, 338 (1996), *aff'd*, 112 F.3d 488 (Fed. Cir. 1997); *accord BASF Corp. v. United States,* 427 F. Supp. 2d 1200, 1209 (Ct. Int'l Trade 2006); *Clarendon Marketing, Inc. v. United States*, 955 F. Supp. 1501, 1503 (Ct. Int'l Trade 1997) ("The statutory presumption of correctness contained in 28 U.S.C. § 2639(a)(1) is inapposite to the Government's proffered classification.  When merchandise is liquidated under a concededly erroneous classification, the presumption of correctness does not attach[.]").

As we have demonstrated in our cross-motion for summary judgment, and as we discuss further below, summary judgment for the Government is appropriate based upon the correct interpretation of subheading 8544.42.20 and the undisputed facts gathered by the Government concerning whether the subject cables fall within the scope of the tariff provision.

## II.    CYBER POWER'S CABLES ARE NOT CLASSIFIED IN SUBHEADING 8544.42.20, HTSUS

As discussed in our cross-motion and further below, Cyber Power's power cables are not cables of a kind used for telecommunications of subheading 8544.42.20, HTSUS, and are thus classified as "other" cables under subheading 8544.42.90.

Subheading 8544.42.20 provides for "Insulated (including enameled or anodized) wire, cable (including coaxial cable) and other insulated electric conductors, whether or not fitted with connectors[:] . . . Other electric conductors, for a voltage not exceeding 1,000 V: Fitted with connectors: Other: Of a kind used *for* telecommunications."  Plaintiff erroneously substitutes the phrase "of a kind used *in* telecommunications" for the actual language of the statutory provision,

thereby misinterpreting the breadth of the statutory provisions.  *See* Pl.'s Resp. Br. at 3, 4, 6, 7, 11; *see also* Pl.'s Mot. For Summ. J. at 13, 14, ECF No. 57 (Mar. 28, 2025) ("Pl.'s Br.").  As we explained in our cross-motion, the tariff provision uses the preposition "for" and conveys the purpose or intended use of the "class or kind" of cables covered by this subheading.  *See* Def.'s Cross-Mot. For Summ. J. and Resp. In Opp. To Pl.'s Mot. For Summ. J. at 25, ECF No. 61 (June 27, 2025) ("Gov't Br.").  The kinds of cables (or other electric conductors) provided by this provision are those for which its use is for the purpose of telecommunications.  It does not mean that the cables are "used in" or otherwise "relate to" telecommunications.  The statutory phrase "used for telecommunications" thus answers the question: what are the cables used for?  Here, the subject cables are used to transmit power to an internet service provider's ONT from one of Cyber Power's battery backup units.

The term "of a kind used for telecommunications" also requires an analysis of the "principal use" of the subject merchandise, which is the "controlling use" for classification purposes under Additional U.S. Rule of Interpretation (ARI) 1(a).  *See* ARI 1(a); *Primal Lite, Inc. v. United States*, 22 C.I.T. 697, 700 (1998), *aff'd*, 182 F.3d 1362 (Fed. Cir. 1999).  As indicated by plaintiff, *see* Pl.'s Resp. Br. at 4–5, most of the subject cables also contain conductors that transmit signals from the battery backup unit to the ONT.  *See* Gov't SOF ¶¶ 30–34.  But the principal use of subject merchandise, and the class or kind of merchandise to which it belongs, is to provide power from one device to another.  *See* Gov't Br. at 19–25.  This is evident by both the physical characteristics of the cables but also by their function.  *Id.*  The additional signals transmitted by the cable from the battery backup unit are incidental to the power transmission role of the cable, are all related to the power transmission provided by the cable, and do not transmit any other type of signals or data.  Because the "principal use" of the

subject merchandise is the "controlling use" for classification purposes, *see* ARI 1(a), HTSUS, that the cables also transmit certain limited signals does not render them cables of a kind used for telecommunications.

Plaintiff then identifies the term "telecommunications" also meaning "technology that deals with telecommunication," arguing that such definition would include the subject cables because "they assist in running an ONT and deal with assisting in communications." *See* Pl.'s Resp. Br. at 5. But the "technology" that deals with telecommunication here is the ONT, not the subject cables, which provide, as their purpose, electricity to the device. The subject cables assist in any ongoing telecommunications operation only insofar as they power the device. Rather, plaintiff simply seeks to have the term "telecommunications devices" or "telecommunications apparatus" replaced for the actual statutory provision at issue. Indeed, the HTSUS elsewhere specifies "telecommunications apparatus," *see* subheading 8414.59.15, HTSUS, or "instruments or apparatus . . . for telecommunications." *See* subheading 9030.40.00; *see also* Gov't Br. at 26 (citing subheadings 8504.40.85 and 8504.50.40 as additional examples). In this context, the term "telecommunications" as used in the tariff schedule means the transmission, receipt, or transfer information by electromagnetic means. This is consistent with the definition in Article 1.3 of the Radio Regulations referenced by plaintiff. *See* Pl.'s Resp. Br. at 3–4; *see also* Pl.'s Br. at 11–12. By contrast, the term "telecommunications apparatus" as used in the tariff schedule refers to those devices that perform that function. Applied to cables of heading subheading 8544.42.20, only those cables of a kind used for transmitting, receiving, or transferring information by electromagnetic means are classified therein.

Moreover, unlike the cables at issue, the cables addressed by the CBP rulings cited by plaintiff were all cables of a kind used for telecommunications.[2]  CBP Rulings N158935 (Apr. 29, 2011), N177229 (Aug. 8, 2011), and H024054 (Sept. 3, 2010) all concerned the classification of a high-definition multimedia interface (HDMI) cable.  In H024054, the HDMI cable was described as "used for the transmission of digital signals."  *Id.*  CBP thus concluded, based on definitions of the term "telecommunications" proffered by the Government in this action, that the cables were classified under subheading 8544.42.20.[3]  Similarly, Ruling H029719 (Nov. 7, 2008), referenced in H024054, concerned USB and Ethernet cables.  CBP concluded that the USB and Ethernet cables "are used for the two-way transfer of data between a personal computer and various other devices."  *Id.*  The USB cable was specifically described as "allowing for the transfer of data or music" between a computer and a USB device.  The HDMI, Ethernet, and USB cables were determined by CBP to be of a kind used for telecommunication because they serve the purpose of transmitting data over the wires.  Contrary to plaintiff's claim, *see* Pl.'s Br. at 5, these cables are not comparable to the subject cables.  The CBP rulings are consistent with the Government's interpretation of the term "telecommunications" to mean the function of transmitting data.  Therefore, the CBP rulings only further support the Government's argument.

Finally, plaintiff's rehashing of the *Carborundum* factor analysis is unpersuasive for the same reasons as we outlined in our cross-motion and identified above.  Plaintiff's analysis of

---

[2]  Plaintiff cites CBP Ruling J803852 (Jan. 30, 2003), but that ruling does not concern merchandise classifiable under subheading 8544.42.20.

[3]  We note that in H024054, the HDMI cable at issue contained a conductor that transmitted 5 volts of direct current (*i.e.*, power) in addition to the communications conductors. Just as the presence of data conductors do not transform the Cyber Power cables into a telecommunications cable, similarly, the HDMI cable is not a power cable simply because it contains a conductor providing low voltage. This is because the HDMI cable is "used for"—*i.e.*, its purpose is—the transmission of digital signals.

each factor rests on the fact that these cables are used *in* telecommunications, either by being used with a telecommunications device or by a telecommunications company.

* * *

As we explained in our cross-motion, the subject cables are properly classified in subheading 8544.42.90, as cables other than those of a kind used for telecommunications. Because the subject cables are classified under subheading 8544.42.90, they do not meet the terms of the exclusion from Section 301 duties under Note 20(ll)(61), Chapter 99, HTSUS.

## III.  THE COURT CAN AND SHOULD ORDER CYBER POWER TO PAY ADDITIONAL DUTIES

In this action, the Government asserted a counterclaim asserting that the correct classification of the subject cables is under subheading 8544.42.90 at a duty rate of 2.6 percent *ad valorem*.  This Court redenominated the counterclaim as a defense within the Government's Answer.  *See Cyber Power Systems (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1334 (Ct. Int'l Trade 2022).  Regardless of whether the Government's claim is properly asserted as a counterclaim or an affirmative defense, to the extent that the Court holds that the correct classification of the subject cables is properly under subheadings 8544.42.90 and 9903.88.03, HTSUS, this Court can and should order CBP to reliquidate the subject entries or order a money judgment for the United States.

First, this Court has the power to order the reliquidation of the entries with the payment of increased duties or to issue a money judgment in the amount of the duty difference.  In actions filed under 28 U.S.C. § 1581, such as here, the Court "may enter a money judgment . . . for . . . the United States," 28 U.S.C. § 2643(a)(1), or "order any other form of relief that is appropriate," 28 U.S.C. § 2643(c)(1).  This statute, enacted as part of the Customs Court Act of 1980, provides statutory authority for the Court to provide the relief requested by the Government.  Contrary to

9

plaintiff's claim, *see.* Pl.'s Resp. Br. at 12, this statute precisely grants the Government the ability to recover duties in this action.

Second, this Court should order relief in the form of the reliquidation of the subject entries with the payment of increased duties or a money judgment in the amount of the duty difference owed.[4] Affording relief to the United States would implement the intent of Congress in enacting the Customs Court Act of 1980, where Congress indicated that, after passage of the Act, "it would be possible for the court to rule that a plaintiff should pay additional duties to the United States" if the United States proved that such duties are owed in a matter filed under 28 U.S.C § 1581(a). *See* H.R. Rep. 96-1235, 35, 1980 U.S.C.C.A.N. 3729, 3746. Moreover, in adding monetary relief under 28 U.S.C. § 2642(a), Congress permitted this Court to "simply enter a judgment for the [customs duties] amount to be refunded" in cases in favor of an importer, in lieu of "an order that the entry be reliquidated in accordance with the decision of the court," since both actions have the same effect. H.R. Rep. 96-1235 at 60. But it "also alter[ed] the [then] current law by permitting the Court to enter a money judgment *for* the United States" as well because the Court previously could not do so. *Id.* (citing 28 U.S.C. § 2642(a)) (emphasis added). Thus, Congress intended for the Court to order the reliquidation of the entries with the payment of increased duties or issue a money judgment for the Government, when the Government correctly proves a claim for the classification of merchandise at a higher rate of

---

[4] In *Jarvis Clark*, following the Court of Appeal for the Federal Circuit (CAFC)'s remand to this Court, the matter was further remanded to Customs "for the purpose of classifying this merchandise in accordance with this decision and that of the [CAFC]." *Jarvis Clark Co. v. United States*, 8 C.I.T. 280, 281 (1984). In that case, however, the importer-plaintiff on remand to the USCIT urged classification under its claimed heading under a different theory, and the court noted the possibility that other provisions may apply. *Id.* Remand to the agency is not necessary here if, as it should, the Court determines the correct classification and appropriate duty rate.

duty than that assessed at liquidation.  It would be inconsistent with the statutory scheme created by Congress for the Court in 28 U.S.C. § 2643 to issue a decision and judgment finding that the correct duty rate applicable to the subject merchandise is 2.6 percent *ad valorem* without any corresponding relief to the Government.  As we indicated in our cross-motion for summary judgment, *see* Def.'s Resp. Br. at 30–31, the Court should order that the appropriate duties owed are paid.

Plaintiff's arguments to the contrary lack merit.  Plaintiff first argues that ordering payment of the difference in duties would run afoul of the separation of powers because it would essentially be a tax levied by the judicial branch.  *See* Pl.'s Resp. Br. at 12–13.  Not so.  This argument confounds the Article I power delegated to the executive branch with the power vested in this Court to order appropriate relief, including the ability to order reliquidation with the increase of duties or a monetary payment to the United States, in cases filed under section 1581(a).  The district court case on which plaintiff relies, *In re Petition of Beck*, 526 F. Supp. 2d 1302 (S.D. Fla. 2007), *see* Pl.'s Resp. Br. at 13–14, is inapposite.  There, plaintiff filed a petition to the court for a license to engage in maritime salvage operations pursuant to 46 U.S.C. § 80102.  *In re Petition of Beck*, 526 F. Supp. 2d at 1292.  That statute, which has since been repealed, required that "a license [be] issued by a judge of the district court for the United States for a judicial district of Florida" for a business to be engaged in salvaging in Florida.  *Id.*  In finding that the statute violated the Vesting Clause, Article III, § 1 of the U.S. Constitution, the court held that it lacked power to issue licenses because the power to do so was not a judicial act, or taken in furtherance of a judicial act, contemplated by the Vesting Clause's use of the term "judicial power."  *Id.* at 1303 (citing U.S. Const. Art. III, § 1); *see also id.* at 1303–4 (finding that "the power to issue licenses is deposited in the Executive Branch").

11

Here, however, 28 U.S.C. § 2643(a) and (c) do not impermissibly empower this Court to perform a "non-adjudicatory function" that is more than "simply incidental to the judicial action." *Id.* at 1303 (citing *Hayburn's Case*, 2 U.S. 409, 409-10 (1792); *United States v. Ferreira*, 54 U.S. 40, 46–48 (1851)).  Rather, ordering monetary relief or equitable remedies (in form of ordering reliquidation) is a quintessential exercise of judicial power under Article III, § 1 of the U.S. Constitution.  *See* 28 U.S.C. § 1585 (granting this Court with "all the powers in law and equity of . . . a district court").  Providing the Government with the duty difference in this case would be "in furtherance of [the] judicial act" of deciding the correct classification of the subject merchandise.  *Id.* at 1303.

Plaintiff then argues that *Jarvis Clark* "does not grant [this Court] the power to assess duties not imposed by CBP at liquidation."  Pl.'s Br. at 14.  Although *Jarvis Clark* specifically addressed the Court's remand power under 28 U.S.C. § 2643(b), the result from a finding that the correct duty rate is one higher than assessed at liquidation does not equate to a circumstance where "there was no protestable decision 'adverse to the importer[,]'" as argued by plaintiff.  *Id.* In this case, there was a decision on the protest adverse to the importer, which caused the protest and instant lawsuit, triggering this court's jurisdiction under 28 U.S.C. § 1581(a).  Subsequently, the correct outcome under *Jarvis Clark* is that this Court exercise its authority under section 2643 to order relief *for* the United States.  *See Second Nature Designs Ltd. v. United States*, 654 F. Supp. 3d 1301, 1307 n.6 (Ct. Int'l Trade 2023) (stating that an importer "may be liable to the Government for increased duties" if the Court concludes "that the appropriate classification carries a duty at a rate higher than that initially assessed by Customs"); *id.* ("'[T]he right of the United States to recover duties owed as a result of the Court's obligation to reach the correct

result [is] a right addressed by *Jarvis Clark*.'") (*quoting Cyber Power*, 586 F. Supp. 3d at 1332 n.13, 1334).

Finally, plaintiff incorrectly suggests that the Government's request disregards the statutory finality imposed by 19 U.S.C. § 1514(a). The protest statute makes clear that a decision of CBP is not final and conclusive upon *all persons* if a civil action contesting the denial of a protest is commenced in the USCIT, as is the case here. *See* 19 U.S.C. § 1514(a). The protest statute thus does not bar this court from ordering the appropriate relief.

Accordingly, the Court should order the reliquidation of the subject merchandise under subheading 8544.42.90, HTSUS, and order plaintiff to pay the increased duties flowing from the duty rate of 2.6 percent *ad valorem*, which constitutes the duty difference in this case.

## **CONCLUSION**

For the reasons above, and those set forth in our cross-motion for summary judgment, we respectfully request that this Court grant our cross-motion for summary judgment and dismiss this action.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel:*

VALERIE SORENSEN-CLARK
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

December 19, 2025

/s/ Mathias Rabinovitch
MATHIAS RABINOVITCH
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-0484
*Attorneys for Defendant*

14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | | |
|---|---|---|
| CYBER POWER SYSTEMS (USA) INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 21-00200 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, MATHIAS RABINOVITCH, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief in support of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4,123 words.

<u>/s/ Mathias Rabinovitch</u>
MATHIAS RABINOVITCH